**UNITED STATES of America,**

v.

**Gerald O. JACKSON, a/k/a Jerry Lnu, Gerald O. Jackson, Appellant.**

No. 01–1164.

United States Court of Appeals, Third Circuit.

Argued May 21, 2002.

Decided June 14, 2002.

Regional Director a sworn statement of the steps taken to comply with this order.

Michael A. Armstrong (argued), Willingboro, New Jersey, for Appellant.

Robert J. Cleary, United States Attorney, George S. Leone, Chief, Appeals Division, Maureen A. Ruane, Assistant United States Attorney, Gail Zweig (argued), Assistant United States Attorney, Newark, New Jersey, for Appellee.

Before BECKER, Chief Judge, GREENBERG, Circuit Judge, and BARZILAY, Judge, U.S. Court of International Trade.*

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant Gerald Ojobi Jackson was indicted for and convicted at a jury trial of knowingly and intentionally conspiring to distribute and to possess with intent to distribute more than 100 grams of heroin contrary to 21 U.S.C. § 841(a)(1) in violation of 21 U.S.C. § 846. The district court determined that his total offense level was 36 and his criminal history category was IV, calculations that yielded a sentencing range of 262 to 327 months. The court sentenced Jackson to a custodial term of 262 months to be followed by a four-year term of supervised release.

Jackson appeals, raising issues both with respect to his conviction and to the court's calculations in establishing his sentencing range. Specifically, Jackson advances three contentions regarding his conviction: (1) the court erred in refusing to provide him with a bill of particulars; (2) the court should not have permitted evidence pointing to his country of national origin, Nigeria, during the trial; and (3) the court erred in denying his motion to strike his alias, "Jerry," from the indictment. Jack-

* Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

son challenges the calculation of his total offense level and thus his sentencing range, contending that the court erred in determining the quantity of heroin attributable to him, 824.7 grams, resulting in a base offense level of 30 pursuant to U.S.S.G. § 2D1.1(c)(5) and erred in finding that he was an organizer or leader of the offense which involved five or more participants resulting in a 4–level enhancement under U.S.S.G. § 3B1.1(a). After a careful review of this matter, we find that Jackson's contentions are clearly without merit and thus we will affirm. We, however, make the following observations.

Jackson's contentions with respect to his conviction are all subject to deferential review on an abuse of discretion or plain error basis. *See United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Mathis*, 264 F.3d 321, 326–27 (3d Cir.2001); *United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir.1999); *cert. denied*, 528 U.S. 1131, 120 S.Ct. 969, 145 L.Ed.2d 840 (2000); *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir.1975).

First, we are satisfied that Jackson received sufficient information so that the denial of his motion for a bill of particulars did not impair his ability to defend against charge. Before trial, Jackson filed a motion requesting a bill of particulars pursuant to Fed.R.Crim.P. 7(f), which provides in relevant part that "the court may direct the filing of a bill of particulars." We have noted that:

> The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to ade-

quately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense. A bill of particulars should fulfill this function when the indictment itself is too vague and indefinite for such purposes.

*United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir.1971) (internal quotation marks and citations omitted).

We review a district court's denial of a motion for a bill of particulars for abuse of discretion. *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir.1989). A district court abuses its discretion in this context only when "the deprivation of information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial or to avoid the later risk of double jeopardy." *Addonizio*, 451 F.2d at 64. In addition to showing that the district court abused its discretion, a defendant must demonstrate that he was prejudiced by the denial of the bill in order to obtain relief. *See Rosa*, 891 F.2d at 1066. We have noted that when the denial of a motion for a bill of particulars is upheld it invariably has been "either because the information otherwise available to the defendant at the pretrial stage was found to give adequate notice ... or because no prejudice or surprise was shown to have resulted from the denial of the information sought." *Id.*

Jackson objects primarily to the fact that during the hearing on his motion for a bill of particulars, the prosecutor specifically told the court (mistakenly) that there would not be evidence presented with respect to unindicted co-conspirators.[1] He

---

1. The district court engaged in the following colloquy with the prosecutor during its hearing on Jackson's motion for a bill of particulars:

> The Court: All right. Okay, now, as far as the defense requested for a bill of particu-

lars, I will deny that based upon present existing law except that I don't know if you're alleging that there are any unindicted co-conspirators, are you Ms. Murray? AUSA Murray: Unindicated co-conspirators. No, You Honor, I don't believe so.

also challenges the government's failure to provide the name of the co-conspirator "Ben," from whom the government alleged he received the heroin that he sold to the government's undercover agent. The government asserts that it was proper for the district court to deny Jackson's request for a bill of particulars because Jackson had sufficient notice of "Ben's" identity and alleged role in the conspiracy.

The government points to three different documents that Jackson obtained during pretrial discovery that, it submits, would have alerted him to the identity of "Ben." First the government points to the indictment itself, which states that Jackson conspired not only with the Calises, but also with "others."[2] The government also cites two reports describing the drug transaction that took place between Jackson and an undercover officer in New York on July 22, 1998. Although neither one names Mbonu–Ike or "Ben," they both provide detailed physical descriptions of the parties involved in the transaction. The first report, prepared on July 22, 1998, the day of the transaction, by undercover narcotics officer Orlando Caprio, describes the transaction as follows. Caprio drove both "Jerry" and another black male (who, according to the prosecutors, was Mbonu–Ike), into New York from Calise's apartment. The report describes Mbonu–Ike as "UBM # 1" for "unidentified black male." The report also describes a second unidentified black male with whom UBM # 1 was seen speaking before he brought the heroin over to Jackson and Caprio.[3] A second report, prepared by an officer Anthony Martino, who also was observing the transaction, provides a similar description of the second unidentified black male, whom the government contends was "Ben."

Although we acknowledge that the prosecutor erred by representing that the government would not be calling any witnesses who were unindicted co-conspirators, we think that Jackson had sufficient notice of the identity and alleged role of "Ben" and that the district court did not abuse its discretion by denying Jackson's motion for a bill of particulars. Thus, we reject Jackson's contention on this point.

Jackson's second contention relates to the evidence at trial mentioning his country of national origin. The few references at trial, however, to his country of original were relevant and not prejudicial. Finally, the reference to Jackson, whose first name is "Gerald," as "Jerry" in the indictment was both appropriate and not prejudicial as he is, in fact, known as "Jerry". Moreover, this is not a case in which the defendant had an inherently prejudicial informal second name such as "killer."

In considering Jackson's sentencing contentions we point out the following. Jackson contends that only 24.7 grams of cocaine should be attributable to him because that was the quantity involved in the delivery on July 22, 1998. But the

---

The Court: All right, I mean you have the four individuals that you know of, but aside from that, are you going to assert at trial that there are any unindicted co-conspirators [and] seek to use their statements?
AUSA Murray: No.
The Court: All right, denied then.
App. at 20–21.

**2.** In fact, the original criminal complaint which predated the indictment charged that the defendants conspired "with others."

**3.** Specifically, Caprio's report describes the second unidentified black male, "Ben" as follows: "a b/m [black male] approx. 5' 9" tall, slight built with a grey baseball-type cap and wearing a faded white and black striped shirt with light colored pants standing on the steps of the MACDONALD'S Restaurant."

agreement was for a sale of 800 to 2000 grams and thus in this conspiracy case the calculation of the quantity of heroin attributable to him was not limited to the amount delivered. Furthermore, Jackson's contention, if accepted, would require the court to sentence him on the basis of a drug quantity less than that attributed to him by the jury as it convicted him of a conspiracy involving more than 100 grams of heroin. In view of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), this would be an extraordinary result as the Court in that case tied the sentence to the jury's findings so as to preclude statutorily authorized enhancements predicated on findings by the court rather than the jury. Thus, it would be illogical to require a district court to disregard a jury's findings with respect to the quantity of drugs involved merely because it is in the defendant's advantage that it do so. Yet Jackson would have us do exactly that. Finally, we are satisfied that the record fully supports the 4–level enhancement under U.S.S.G. § 3B1.1(a).

We close this opinion by noting that Jackson addressed a letter dated May 12, 2002, to Chief Judge Becker contending that he requested that his attorney raise certain issues on this appeal and that he has not done so. Jackson asked for leave to file a pro se supplemental brief in which he apparently intended to raise these issues but on May 14, 2002, we denied that application in accordance with our practice when a party is represented by an attorney. In the circumstances the parties should not infer that we passed on these issues on the merits.

The judgment of conviction and sentence entered January 10, 2001, will be affirmed.