IN THE SUPREME COURT OF THE STATE OF DELAWARE

| RONALD LUTTRELL, | § | |
|---|---|---|
| | § | No. 488, 2013 |
| Defendant Below, | § | |
| Appellant, | § | Court Below – Superior Court |
| | § | of the State of Delaware, |
| v. | § | in and for Kent County |
| | § | Cr. I.D. 1210010232 |
| STATE OF DELAWARE | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

Submitted: June 4, 2014
Decided: July 15, 2014
Revised: July 28, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **BERGER**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Nicole Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

**HOLLAND**, Justice:

The defendant-appellant, Ronald Luttrell, appeals from his convictions in the Superior Court of one count of Attempted Rape in the First Degree, three counts of Unlawful Sexual Contact in the First Degree, one count of Attempted Unlawful Sexual Contact in the First Degree, and two counts of Indecent Exposure.

Luttrell raises two claims in this direct appeal. First, Luttrell claims that the Superior Court abused its discretion when it failed to grant his motion for a bill of particulars, because the indictment did not clearly delineate the acts for which he was being prosecuted or when they occurred, and therefore it did not allow him to adequately prepare a defense or protect him from double jeopardy. Second, Luttrell contends that the Superior Court committed plain error when it allowed impermissible ‒vouching‖ evidence to be presented to the jury.

We have concluded that the Superior Court abused its discretion in denying Luttrell's motion for a bill of particulars. We also conclude that the admission of vouching evidence constituted plain error. Therefore, the Superior Court's judgment of convictions must be reversed and the matter remanded for a new trial.

### *Facts*[1]

On September 20, 2012, Lisa Dear walked in on her son, 10-year-old TF,[2] exposing himself to his cousin, a 5-year-old girl. Dear was furious with TF and testified that she slapped him, yelled at him for his behavior, and asked him what

---

[1] The facts are drawn from the record below.
[2] Pseudonyms are assigned for the complainant pursuant to Supreme Court Rule 7(d).

was wrong with him and where he had learned to do that. TF then began crying and informed Dear that, during a weekend that TF had spent at his grandmother's mobile home in July 2012, Luttrell — a friend of his grandmother's who had been sleeping on his grandmother's couch because he did not have a home — had touched him inappropriately. Dear stopped yelling at TF, hugged him, and then called the police, who came and took TF's complaint against Luttrell.

TF was later interviewed at the Child Advocacy Center (―CAC‖). TF stated that he had spent the weekend of July 14, 2012 with his grandmother, Cheryl Elmore, and that he slept in the living room of Elmore's mobile home. TF's grandmother, her husband, and their dog, a Chihuahua that the grandmother testified yelps a lot, all slept in the mobile home's bedroom with the door open. TF said that on Friday night — presumably the night of July 13, 2012 — he was sleeping on the couch when Luttrell came home drunk, woke him up, and told him to lock the front door.

TF claimed that after he locked the front door and went back to sleep, Luttrell woke him again and attempted, unsuccessfully, to force TF to have sexual contact with him; force TF to perform oral sex on him; and perform oral sex on TF. TF claimed that he escaped to the adjacent bathroom and locked the door. TF also said that at some point during the night, he complained to his grandmother about

3

Luttrell's actions and that after he did so his grandmother left in the middle of the night to go to Wawa to get herself a cup of coffee and to get TF a slushy.

Later in the CAC interview, TF said that Luttrell committed similar acts of molestation the following night on Saturday, July 14, 2012. TF told the CAC interviewer that, on Saturday night, Luttrell climbed through an open window and into Elmore's mobile home because the front door was locked. Among other allegations, TF claimed that he was sleeping on his stomach when Luttrell removed TF's pants and anally penetrated him. TF claimed that he got away from Luttrell and locked himself in the bathroom on Saturday night as well. As with the prior evening, TF's grandmother, her husband, and the dog were all present in the mobile home during the alleged assault. TF stated that he slept in the bathroom on both Friday and Saturday night.

On October 15, 2012, Detective Daniel Wright obtained a warrant for Luttrell's arrest based upon TF's CAC interview. Luttrell was subsequently taken to the police station — though he was not yet under arrest — where he voluntarily chose to speak with Detective Wright. During the interview, Luttrell denied having either molested or raped TF and cooperated with Detective Wright's requests for information. But Luttrell, who did not have a home and was a transient, had difficulty remembering where he was on particular days. Luttrell is reportedly illiterate and suffers from alcoholism.

4

Other people had already informed Luttrell that he was accused of molesting TF during the weekend after Elmore's wedding. Luttrell first told Detective Wright that he had been in Dallas, Texas that weekend. Then, after Detective Wright specifically told Luttrell that the dates in question were July 20 and 21, 2012, Luttrell said that he had been staying at Elmore's neighbor's house that weekend. But Luttrell admitted that he spent one night at Elmore's house when TF was present. Luttrell told Detective Wright that TF slept on the couch, while he slept on the loveseat, and that nothing improper happened between the two of them. After his interview with Detective Wright, Luttrell was placed under arrest.

Luttrell was indicted on two counts of Rape First Degree, one count of Attempted Rape First Degree, three counts of Unlawful Sexual Contact First Degree, one count of Attempted Unlawful Sexual Contact First Degree, two counts of Endangering the Welfare of a Child, and two counts of Indecent Exposure. Before the trial, Luttrell filed a motion to dismiss or, in the alternative, a motion for a bill of particulars, arguing that the State's indictment: (i) failed to allege essential elements of the crimes charged, (ii) failed to contain a plain statement of the essential facts of the crimes alleged, and (iii) failed to put Luttrell on notice of the particular crimes he was charged with so that he could prepare a defense.

Luttrell pointed out that he was charged with multiple counts of the same general offense and the indictment did not contain sufficient facts to differentiate

5

each count from others of the same type. For example, the indictment included three counts of Unlawful Sexual Contact, each of which was identically worded.[3] Unlawful Sexual Contact is defined broadly by statute to include many possible actions,[4] and the three identical counts in the indictment simply parrot the statute's expansive words. Thus, there is nothing in the indictment that allows anyone to distinguish the separate conduct that supposedly underlies each of the three counts. The indictment also included two counts of Indecent Exposure, and the only distinction between the two counts was that they included different dates.[5] But the Superior Court rejected Luttrell's request for a bill of particulars, ruling that:

---

[3] Counts 4, 5, and 6 of the indictment charged Luttrell with Unlawful Sexual Contact. Each count stated:

> UNLAWFUL SEXUAL CONTACT FIRST DEGREE, a felony, in violation of Title 11, Section 769 of the Delaware Code of 1974 as amended. RONALD G. LUTTRELL, on or about the 20th day of July through the 21st day of July, 2012, in the County of Kent, State of Delaware, did intentionally have sexual contact with [TF], who had not reached their thirteenth birthday.

Appendix to Opening Br. at A6.

[4] Sexual Contact is defined under 11 *Del. C.* § 761(f) to mean:

> (1) Any intentional touching by the defendant of the anus, breast, buttocks or genitalia of another person; or
> (2) Any intentional touching of another person with the defendant's anus, breast, buttocks or genitalia; or
> (3) Intentionally causing or allowing another person to touch the defendant's anus, breast, buttocks or genitalia[.]

[5] Counts 10 and 11 of the indictment charged Luttrell with Indecent Exposure First Degree. Count 10 stated:

> INDECENT EXPOSURE FIRST DEGREE, a misdemeanor, in violation of Title 11, Section 765 of the Delaware Code of 1974, as amended.
> RONALD G. LUTTRELL, on or about the 20th day of July, 2012, in the County of Kent, State of Delaware, did expose his genitals to [TF] who is less than 16 years of age, under circumstances in which he knows his conduct was likely to cause affront or alarm.

6

> The defendant is apprised of what the charges are. They're in the probable cause affidavit. That's what the State's obligated to pursue. If the State starts to prove something that the defendant was not anticipating dealing with, that can be raised at the time.

The State never identified — either for Luttrell or the jury — which facts corresponded to each charge in the indictment. Even during its closing argument, the State could not link the facts elicited at trial to a corresponding charge, but rather, admittedly, addressed the facts in a way that did not line up with the indictment.

The indictment stated that the criminal acts occurred on July 20 and 21, 2012, but TF's CAC statement asserted that the criminal acts occurred on July 13 and 14, 2012. At trial, TF's testimony changed; TF again said that the incidents of sexual assault occurred on the weekend of July 14, 2012, but now said that they happened on Saturday and Sunday, rather than on Friday and Saturday. There were other inconsistencies between TF's CAC statement and his trial testimony.

For example, TF told the jury that Luttrell never anally penetrated him and denied ever saying that Luttrell had done so, despite his videotaped statement to the contrary. TF also denied ever saying that Luttrell climbed through the window. Furthermore, TF testified at trial that he had complained to his grandmother,

---

Appendix to Opening Br. at A8. Count 11 was identical to count 10, except that instead of stating that the date was ‒on or about the 20th day of July, 2012‖ it stated ‒on or about the 21st day of July, 2012.‖ *Id.*

7

Elmore, both nights and that she had confronted Luttrell on each night, even though in TF's CAC statement he said that he only complained to Elmore the first night. TF also testified that after he locked himself in the bathroom each night, he had climbed through a cubbyhole into Elmore's bedroom. TF had never mentioned that to CAC.

The testimony of TF's grandmother, Elmore, contradicted TF's testimony in several ways. Elmore testified that there was no cubbyhole in the bathroom and that there was no way TF could have climbed through a hole in the bathroom into her bedroom. Elmore also testified that TF only complained to her on one night, and that she thought that TF was complaining about a scary movie that Luttrell had on the television and she asked Luttrell to turn the movie off. Although Elmore and her husband were in the mobile home's bedroom — approximately eighteen feet from the living room where the alleged incident occurred — at all times when TF claims to have been molested by Luttrell, neither Elmore nor her husband recalled hearing any commotion on either night. Elmore also testified that on both nights her Chihuahua was in the bedroom with her and that the dog did not yelp on either night. Elmore also said that she did not wake up on either night and go to the Wawa.

During its case-in-chief, the State called Detective Wright as a witness and introduced the video of his pre-arrest interview with Luttrell. A section of video was played for the jury in which the following exchanges took place:

Luttrell: I don't know why . . . someone say something like that against me.
Wright: Well, see you know . . . we base things on credibility. . . ya know what I mean?
Luttrell: Yeah . . .
Wright: (unintelligible) And uh, in this case, we have a child that was interviewed . . .
Luttrell: Right . . .
Wright: And umm, no adults, just a child . . .
Luttrell: Right
Wright: And uh, he's pretty adamant about what... what he said you did . . .

…

Wright: Well that's what I am saying …

Luttrell: I'm gunna have to go through all of this to prove myself innocent … it never happened…
Wright: Well we could … the whole thing is, is that…

…

Wright: What I am saying is that … we, we look at motive … and a 10 year old who doesn't know somebody, who doesn't have, who seems to get along with you, doesn't really have a reason to make stuff up.
Luttrell: Right…

Furthermore, Detective Wright testified, in relevant part, that:

Wright: Initially, after interviewing [Luttrell], I thought about the interview in and of itself and the inconsistencies I was picking up. Right from the very beginning Mr. Luttrell says he recognizes the boy by the name of ‒[TF].‖ He said that he was told that it happened on the week after Mrs. Elmore's wedding, and that couldn't have happened because he wasn't there. He was in Texas. First he

9

admits that he is in Texas. Later on in the interview he says on that day — because he remembers that day, or that weekend — that [TF] wasn't there that weekend. Then, he wasn't there; he was at a neighbor's house. Later on he says that he was — he does know [TF]. I'm sorry. He knew [TF] in the beginning but, at the end, when I mentioned [TF]'s name, he said: well, I didn't even know he goes by ‒[TF].‖ And the inconsistencies of what he's saying, and he can verify — nothing was ever produced to verify; nothing that he was in Texas. Don't know who the name of the person was — if you spent the night — someone spent the night at John's house, Jane's house; or going to tell you where they stayed. Their memory — they're going to remember that. It's ironic that he could remember things because he has to write everything down; later on, in the interview, he remembers everything. What he can't remember, he writes down in the book which he has back somewhere; but later on, you know, he can remember everything. So there was a lot of inconsistencies with Mr. Luttrell's statement. And after reviewing that he was arrested.

Detective Wright was also asked on cross-examination why arrest paperwork had been filled out before his interview with Luttrell, and he responded:

Wright: [D]uring the course of the interview, if Mr. Luttrell could produce something that said where he was at, other than saying he was at three or four – three different locations and there were something to corroborate, he would not have been arrested that day; that portion would have been investigated. However, based on his – the inconsistencies that I thought of as the investigator I affected the arrest.

Luttrell's counsel did not object at trial to the video testimony or to Detective Wright's live testimony.

10

Luttrell was acquitted of the two charges of Rape First Degree, but was convicted on the remaining charges: Attempted Rape in the First Degree, three counts of Unlawful Sexual Contact in the First Degree, one count of Attempted Unlawful Sexual Contact in the First Degree, and two counts of Indecent Exposure. After the jury returned its verdict, Luttrell filed a motion for judgment of acquittal renewing his challenge to the indictment. The Superior Court denied that motion at the post-trial sentencing hearing, stating that the allegations in the ‒arrest warrant, the probable cause affidavit, the police reports, [and] the discovery items,‖ provided Luttrell with sufficient information to mount a defense. Luttrell was sentenced to 26 years in prison, followed by a lengthy period of probation.

### Issues on Appeal

First, Luttrell argues that the Superior Court denied him his constitutional rights to due process and to be free from double jeopardy when it denied his motion for a bill of particulars and sent the indictment to the jury without clarifying which occurrences were charged in each of the counts. At the very least, Luttrell argues, the Superior Court's denial of his motion for a bill of particulars was an abuse of discretion on the facts of this case. Second, Luttrell argues that the Superior Court committed plain error by allowing into evidence the video of Detective Wright's interview with Luttrell and Detective Wright's testimony regarding Luttrell's and TF's relative credibility.

11

## *Bill of Particulars Improperly Denied*

The grant or denial of a defendant's motion for a bill of particulars is within the sound discretion of the trial court.[6] This Court reviews claims that a ruling of the trial court violated a defendant's constitutional rights *de novo*.[7]

An indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."[8] The function of an indictment under Delaware law is "to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense."[9] In addition to the indictment, Superior Court Rule 7(f) permits the trial court to "direct the filing of a bill of particulars."[10] A bill of particulars is intended to supplement the information set forth in the indictment, and in so doing, it both "protect[s] the defendant against surprise during the trial, and [precludes] subsequent prosecution for an inadequately described offense."[11]

This Court has explained that, where the defendant is "uncertain of what specific conduct he was being prosecuted for, it [is the defendant's] burden to

---

[6] *See* Super. Ct. Crim. R. 7 (f) ("The court *may* direct the filing of a bill of particulars…. (emphasis added)); *State v. Wright*, 2000 WL 710184, at *1 (Del. Super. Feb. 23, 2000); *State v. Banther*, 1998 WL 283476, at *1 (Del. Super. Apr. 2, 1998); *accord United States v. Urban*, 404 F.3d 754 (3d Cir. 2005); *United States v. Jackson*, 39 Fed. Appx. 720 (3d Cir. 2002); *United States v. Armocida*, 515 F.2d 49 (3d Cir. 1975); *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971).

[7] *Weber v. State*, 971 A.2d 135, 141 (Del. 2009).

[8] Super. Ct. Crim. R. 7(c)(1).

[9] *Malloy v. State*, 462 A.2d 1088, 1092 (Del. 1983) (citations omitted).

[10] Super. Ct. Crim. R. 7(f).

[11] *Lovett v. State*, 516 A.2d 455, 467 (Del. 1986) (citing *United States v. Cantu*, 577 F.2d 1173, 1178 (5th Cir. 1977); *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971)).

12

move for a bill of particulars."[12] This Court recently held in *Dobson v. State*,[13] that a defendant received ineffective assistance of counsel, and therefore was entitled to a new trial, where his defense counsel failed to request of a bill of particulars. In that factually-similar case, the defendant was accused of committing various sexual offenses against a juvenile complainant, but was indicted on fewer acts than the complainant alleged. This Court held that defense counsel in that case provided ineffective assistance of counsel by failing to request a bill of particulars that would have clarified which specific acts corresponded with each specific charge in the indictment.[14]

In this case, Luttrell's counsel did request a bill of particulars, but that request was denied by the Superior Court. The basis for the Superior Court's decision to deny the request was that Luttrell could determine which charge in the indictment corresponded with which alleged acts of sexual misconduct by looking to the information contained in the affidavit of probable cause. But, although the affidavit of probable cause included a summary of the allegations against Luttrell, it did not specify which particular alleged acts aligned with each count in the indictment in a way that would have put Luttrell on notice of the specific conduct

---

[12] *Hughes v. State*, 981 A.2d 1172, at *4 (Del. Supr. Ct. Sept. 22, 2009) (TABLE).
[13] *Dobson v. State*, 80 A.3d 959 (Del. Supr. Ct. Oct. 13, 2013) (TABLE).
[14] *Id.* at *3.

he was being charged with so that he could prepare a defense.[15] This problem was compounded by the fact that the State never explained to the jury which factual allegations aligned with which count of the indictment and the jury instructions did not explain which facts corresponded with each alleged crime. The State even admitted at oral argument that the indictment, the probable cause affidavit, and recitation of charges during the State's closing argument, "didn't line up."

Luttrell argues that although there was more factual information in the underlying arrest warrant, probable cause affidavit, police reports, and discovery items than in the indictment, such information did not put him on notice as to which charge corresponded to which particular alleged act or on what specific day or days he was alleged to have committed the acts. Luttrell argues that this was particularly important in this case where there was conflicting testimony regarding the dates on which the alleged acts occurred, and where that testimony did not align with the dates in the indictment. Likewise, TF's story shifted over time and there were conflicts between his testimony and that of his grandmother, Elmore. Furthermore, because TF alleged more acts against Luttrell than were charged by the State, Luttrell argues that the State impermissibly placed into evidence testimony of uncharged conduct — in violation of this Court's holding in *Getz v.*

---

[15] *See* Appendix to Answering Br. at B52-66.

*State*[16] — to which Luttrell could not object because of the indictment's lack of specificity and the absence of a bill of particulars.  As a result, Luttrell argues that the Superior Court abused its discretion in denying his motion for a bill of particulars, and that he is entitled to a new trial.  We agree.

We hold that Luttrell was entitled to know what specific charges he faced, and that the jury needed to know the same.  Because the only evidence against Luttrell was TF's testimony — which was inconsistent with both his CAC statement and certain testimony given by his grandmother, Elmore — it was especially important that the factual distinction between the counts that Luttrell was charged with be clear so that the jury would only convict Luttrell for committing criminal acts that all twelve jurors found to have occurred beyond a reasonable doubt.[17]  Because neither the indictment, nor any of the underlying materials Luttrell received provided sufficient information for him to understand for what particular conduct he was being prosecuted, the failure to grant Luttrell's motion for a bill of particulars left him unable to adequately present a defense.[18]

---

[16] *Getz v. State*, 538 A.2d 726 (Del. 1988).

[17] Although Luttrell did not request a specific unanimity instruction be given to the jury, the record reflects that such an instruction should have been considered.  *See Probst v. State*, 547 A.2d 114, 120-22 (Del. 1988) (―[I]n cases such as the one before the Court, because of the possibility of a nonunanimous verdict . . . the trial judge must instruct the jury that if a guilty verdict is returned, the jurors must be unanimous as to which *incident* they find the defendant guilty.‖).

[18] For example, without knowing the specific acts on the specific days for which he was being prosecuted, Luttrell was unable to object to evidence of uncharged bad acts which, if objected to, would otherwise be inadmissible character evidence pursuant to D.R.E. 404(b) and this Court's

15

Thus, we hold that the Superior Court abused its discretion in denying Luttrell's motion for a bill of particulars, and the judgment of convictions must be reversed.

### *Officer's Testimony Was Impermissible Vouching*

Luttrell argues on appeal that when the State introduced video of Detective Wright's interrogation of Luttrell in addition to Detective Wright's testimony about the ‒inconsistencies‖ in Luttrell's statement at trial, the evidence amounted to impermissible vouching. Under Delaware law, a ‒witness may not bolster or vouch for the credibility of another witness by testifying that the other witness is telling the truth.‖[19] Impermissible vouching ‒includes testimony that *directly or indirectly* provides an opinion on the veracity of a particular witness.‖[20]

Because Luttrell's trial counsel did not object at trial to the admission of Detective Wright's testimony, we review for plain error.[21] Plain error ‒is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in the character, and which clearly deprive an accused of

---

holding in *Getz v. State*, 538 A.2d 726 (Del. 1988). *See also United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) (finding denial of defendant's motion for a bill of particulars an abuse of discretion where defendant was charged with fewer counts of falsifying documents than there were documents submitted and where the government did not specify which documents corresponded with each count of the indictment).

[19] *Richardson v. State*, 43 A.3d 906, 910 (Del. 2012) (citing *Capano v. State*, 781 A.2d 556, 595 (Del. 2001)). *See*)); *see also Whittle v. State*, 77 A.3d 239 (Del. 2013) (prosecutorial vouching).

[20] *Richardson v. State*, 43 A.3d at 910 (citing *Capano v. State*, 781 A.2d 556,at 595 (Del. 2001))) (emphasis in original).

[21] *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009).

a substantial right, or which clearly show manifest injustice."[22]   When testimony that constitutes such impermissible vouching is admitted into evidence, this Court will find plain and reversible error.[23]

The record supports Luttrell's argument.   In the challenged section of the interview video, Detective Wright suggested that TF was "pretty adamant" about his allegations and said that a ten-year-old "doesn't really have a reason to make stuff up."   Then, during his testimony, Detective Wright repeatedly discussed the inconsistencies in Luttrell's statements during the interview, and suggested that he thought Luttrell was lying.   Detective Wright also provided his opinion regarding Luttrell's veracity when saying that he would not have arrested Luttrell if he had believed the information that Luttrell provided during the interview.   The admission of that evidence against Luttrell is plain error.   Neither the complained-of portions of the interrogation video, nor any testimony from Detective Wright suggesting that Luttrell was not credible because of "inconsistencies" during the interrogation, should be presented at Luttrell's new trial.

### *Conclusion*

The Superior Court's judgment of convictions is REVERSED and the matter is REMANDED for a new trial in accordance with this Opinion.

---

[22] *Robinson v. State*, 65 A.3d 617, at \*2 (Del. May 10, 2013) (ORDER) (citing *Wainright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
[23] *Id.* (citing *Wheat v. State*, 527 A.2d 269, 275 (Del. 1987); *Powell v. State*, 527 A.2d 276, 279 (Del. 1987)).