# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No.  1802014360 |
| | ) | |
| | ) | |
| MELVIN W. FINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted:  April 3, 2025
Decided: August 18, 2025

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED AND DEFENDANT'S MOTION TO BE EXONERATED SHOULD BE DENIED

Dianna A Dunn, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Benjamin S. Gifford IV, Esquire, The Law Office of Benjamin S. Gifford IV, Attorney for Defendant Melvin W. Finney.

SALOMONE, Commissioner

This 18th day of August, 2025, upon consideration of the Amended Motion for Postconviction Relief filed by Defendant Melvin W. Finney ("Finney" or "Defendant"),[1] the Motion to Withdraw as Counsel and Memorandum of Law in support thereof,[2] Defendant's Responses to the Motion to Withdraw,[3] Defendant's Motion to further supplement the Amended Motion,[4] Defendant's Motion to be Exonerated,[5] and the record in this matter, the following is my Report and Recommendation.

## BACKGROUND AND PROCEDURAL HISTORY

Finney was arrested on February 22, 2018, and charged with multiple offenses relating to allegations of sexual abuse made by two of his minor granddaughters, ZG and AG.[6] The Defendant was initially indicted on July 30, 2018 and then reindicted on March 4, 2019 and charged with the following offenses: (i) seven (7) counts of First Degree Sexual Abuse of a Child by a Person in a Position of Trust; (ii) four (4) counts of Rape in the First Degree; (iii) two (2) counts of Continuous Sexual Abuse

---

[1] *State v. Melvin Finney*, Delaware Superior Court Criminal Docket, ID No. 1802014360 at 80 (hereinafter, "D.I. __"). The Defendant filed the Amended Motion after his conviction was affirmed. As such, the Court determined to treat the Amended Motion as Finney's first, timely motion for postconviction relief under Superior Court Rule 61. D.I. 83.

[2] D.I. 95-97, 100, 102. All references to the Appendix to Memorandum in Support of Motion to Withdraw provided by Rule 61 Counsel are hereinafter referred to as "A___").

[3] D.I. 114, 120, 133.

[4] D.I. 123-124.

[5] D.I. 134.

[6] *See* D.I. 1. Adult Complaint and Warrant, dated February 22, 2018. The initials of the minors will be used throughout this Report and Recommendation in lieu of their names.

1

of a Child; (iv) two (2) counts of Unlawful Sexual Contact in the First Degree; and (v) one (1) count of Attempted Sexual Abuse of a Child.[7] These charges stemmed from allegations of sexual abuse which occurred from approximately 2014 to 2017.[8]

On May 6, 2019, at his final case review, the Defendant waived his right to a jury trial and elected instead to proceed with a bench trial before The Honorable Abigail M. LeGrow.[9] Prior to the presentation of evidence, the State entered a *nolle prosequi* on two counts of Sexual Abuse of a Child and one count of Rape in the First Degree.[10] The State also moved to amend one count of Sexual Abuse of a Child to shorten the time period of the alleged charge from June 1, 2014 to August 31, 2014, which the Court granted.[11] Trial commenced on May 14, 2019 with the State proceeding on the remaining charges.

Following the two-day bench trial, on May 16, 2019, the Court found the Defendant guilty of three (3) counts of Sexual Abuse of a Child, two (2) counts of Unlawful Sexual Contact in the First Degree, one (1) count of Rape in the First Degree, and one (1) count of Continuous Sexual Abuse of a Child.[12] The Court acquitted the Defendant of all remaining charges.[13]

---

[7] D.I. 3; D.I. 30.
[8] *Id.*
[9] D.I. 85. Final Case Review Transcript, dated May 6, 2019, at 2-8.
[10] D.I. 71. Trial Transcript, dated May 14, 2019, at 3-4.
[11] *Id.* at 5-6.
[12] D.I. 70. Trial Transcript, dated May 15, 2019, at 93-94.
[13] *Id.*

On September 20, 2019, Finney was sentenced to an aggregate of 131 years of incarceration, suspended after 115 years for decreasing levels of supervision.[14] On or about October 10, 2019, Finney filed two motions—a timely, *pro se* Motion for Modification of Sentence pursuant to Superior Court Criminal Rule 35 and a direct appeal of his conviction to the Delaware Supreme Court.[15] This Court deferred decision on the Motion for Modification of Sentence until resolution of Finney's direct appeal.[16]

After a conscientious examination of the record and the law, Finney's appointed appellate counsel filed a non-merit brief and motion to withdraw in accordance with Supreme Court Rule 26(c).[17] Counsel informed Finney of his right to submit points for the Supreme Court's consideration on appeal, but he failed to do so.[18] On June 3, 2020, the Delaware Supreme Court found Finney's appeal to be wholly without merit and affirmed the judgment of the Superior Court.[19]

On September 25, 2020, this Court denied Defendant's Motion for Modification of Sentence.[20] In doing so, the Court explained that Finney's sentence

---

[14] D.I. 62; D.I. 72. Sentencing Transcript, dated September 20, 2019, at 1-7.
[15] D.I. 65-66.
[16] D.I. 69.
[17] A430-447.
[18] A443-444; *see also Finney v. State,* 2020 WL 2945073, at *1 (Del. 2020).
[19] *Finney v. State,* 2020 WL 2945073 (Del. 2020).
[20] D.I. 82.

did not exceed the minimum mandatory period of incarceration the Court was statutorily required to impose.[21]

## FACTS

The facts of this case were set forth over the course of a two-day trial and evidence a pattern of sexual abuse by the Defendant that occurred over the course of several years. In November of 2017, ZG revealed to her great-grandmother for the first time that the Defendant had been sexually abusing her since she was nine years old.[22] ZG, who was thirteen years old when she confided in her great-grandmother, stated that her grandfather had been "messing with her" and touching her breasts.[23] ZG recalled a specific incident when she was nine years old when the Defendant brought her into the basement of his home on the East Side and made her perform oral sex on him.[24] ZG testified that the encounter ceased after "something came in [her] mouth," which she spit out prior to returning upstairs.[25] ZG further testified that the Defendant told her that if she spoke to anyone about the incident "something was going to happen."[26] ZG stated that she did not tell anyone about the incident because she was scared.[27] ZG recalled being forced to perform oral sex two

---

[21] *Id.*
[22] D.I. 71. Trial Transcript, dated May 14, 2019, at 20-22. ZG was born on March 24, 2005. *Id.* at 39.
[23] *Id.* at 21, 33-35.
[24] *Id.* at 39-49.
[25] *Id.* at 49.
[26] *Id.*
[27] *Id.* at 50.

additional times in the East Side residence when she was in fifth grade.[28] ZG testified that on one of those two occasions her grandfather made both her and her cousin, AG, participate.[29]

ZG described another incident that occurred when she was in sixth grade when the Defendant made her again perform oral sex on him in the basement of her grandparents' home in New Castle.[30] ZG testified that it was also around that time that the Defendant "really. . .started touching on my breasts because that's when I started growing."[31] She recalled a time when she was watching television in the Defendant's bedroom and he touched her breast and placed it into his mouth.[32] She also recalled a time in the New Castle residence when Finney asked her to touch his exposed penis and she abided his request.[33]

Like ZG, AG revealed similar sexual abuse that she had suffered at the hand of her grandfather in November of 2017.[34] AG testified that the Defendant forced her to perform oral sex in his East Side home when she was either nine or ten years old.[35] Specifically, she recalled her grandfather coming into her room while she was

---

[28] *Id.* at 56-59, 71-73.
[29] *Id.* at 71-73.
[30] *Id.* at 50-51, 56-58.
[31] *Id.* at 53.
[32] *Id.* at 53-55.
[33] *Id.* at 67, 69-70.
[34] *Id.* at 109-110.
[35] *Id.* at 130-133.

dressing, pulling down his pants and demanding she perform fellatio.[36]  AG stated

that she initially refused and threatened to tell her parents, but the Defendant told her

that no one would believe her and that she would be in trouble if she failed to

comply.[37]  Thereafter, the Defendant forced her head down and made her engage in

oral sex.[38]

AG also testified regarding a second incident that occurred in the East Side

residence during the summer of 2015 after she had completed fifth grade.[39]  On that

occasion, AG recalled that she was watching a movie in her grandparents' bedroom

when the Defendant went to the bathroom and, upon his return, demanded she again

perform oral sex.[40] AG said that Finney told her she would be beaten if she did not

comply.[41]  AG testified that she was nine or ten years old at the time of the incident.[42]

AG further testified regarding a third incident which occurred in the New

Castle residence when she and ZG were sleeping in the attic.[43]  AG stated that the

Defendant came behind her and tried to reach into her pants to touch her vagina.[44]

She stated that she attempted to wake up ZG, but that the Defendant said not to

---

[36] *Id.* at 131-132.
[37] *Id*. at 132.
[38] *Id*.
[39] *Id*. at 138-142.
[40] *Id*.
[41] *Id*. at 140.
[42] *Id*. at 142.
[43] *Id*. at 143, 145-146.
[44] *Id*.

bother her.[45]  AG stated that the Defendant once again tried to force her to perform fellatio but she ran downstairs to sleep with her older cousin.[46]

AG also testified regarding an incident which occurred during the summer of 2016 when she went down to the basement of her grandparents' house and found ZG on her knees in front of the Defendant with his pants down.[47]  She noted that although his boxers were still on at the time, she could see his exposed penis through the fly of his underwear.[48]  She further testified that Finney attempted to pull up his pants quickly when AG came downstairs and that ZG ran upstairs crying.[49]

Finney's wife of twenty-one years, Marlene, testified at trial that she became aware that something had occurred between the Defendant and her granddaughters in November of 2017.[50]  She confronted Finney about the allegations, and he stated that while they were living at the East Side residence he woke up on one occasion to find AG on top of him with her mouth on his penis.[51]  Marlene testified that Finney stated he never told anyone about the incident because he was embarrassed and did not know what to do.[52]  Marlene also testified regarding certain recorded conversations she had with Finney while he was incarcerated pending trial in which

---

[45] *Id.*
[46] *Id.* at 143-144, 146-147.
[47] *Id.* at 153-154.
[48] *Id.* at 154.
[49] *Id.* at 153-154.
[50] *Id.* at 200, 204-205.
[51] *Id.* at 205-207.
[52] *Id.* at 207.

the Defendant stated there were two incidents with ZG and AG.[53] Finney also stated that he "would have taken it to his grave but then ZG came out with it."[54]

Finney testified in his own defense at trial.[55] He stated that one morning ZG and AG came into his bedroom when he was asleep and that when he awoke AG was on top of him with her mouth on his penis.[56] He stated that ZG also put her mouth on his penis.[57] The Defendant said he told his granddaughters to leave the room and to never do that again.[58] He denied initiating any sexual contact with either of his granddaughters and stated that he intended to take the incident to his grave.[59]

## RULE 61 MOTION AND COUNSEL'S MOTION TO WITHDRAW

Finney filed a timely *pro se* motion for postconviction relief and request for the appointment of counsel on March 6, 2020.[60] On June 26, 2020, he filed a motion for leave to amend his *pro se* motion for postconviction relief.[61] On September 16, 2020, the Defendant filed an amended *pro se* motion for postconviction relief.[62] On September 25, 2020, the Court granted Finney's motion for the appointment of counsel and confirmed that his amended *pro se* motion for postconviction relief was

---

[53] *Id*. at 214.
[54] *Id*.
[55] D.I. 70.  Trial Transcript, dated May 15, 2019, at 40-69.
[56] *Id*. at 43-44.
[57] *Id*. at 48.
[58] *Id*. at 44.
[59] *Id*. at 44-45.
[60] D.I. 75-76.
[61] D.I. 77-78.
[62] D.I. 80.

timely, rendering his motion for leave to amend moot.[63] Rule 61 counsel was appointed on or about September 24, 2021 and given leave to amend Finney's *pro se* motion until November 30, 2021.[64] Rule 61 counsel sought an extension to file an amended motion for postconviction relief or motion to withdraw until February 28, 2022, which the Court granted on December 2, 2021.[65]

On February 25, 2022, assigned counsel filed a motion seeking to stay the proceedings until such time as all recorded statements of various witness interviews could be transcribed.[66] On March 1, 2022, the Court granted the motion to stay proceedings and directed assigned counsel to notify the Court and the State when the transcripts were complete and to file an amended motion for postconviction relief or motion to withdraw within sixty (60) days of completion of the transcripts.[67] On October 28, 2022, assigned counsel notified the Court that the transcriptions had been completed.[68] On December 28, 2022, assigned counsel requested another extension to file an amended motion for postconviction relief or motion to withdraw, which the Court granted the same day.[69]

---

[63] D.I. 81, 83-84.
[64] D.I. 89.
[65] D.I. 89-90.
[66] D.I. 91-92.
[67] D.I. 93.
[68] D.I. 94.
[69] D.I. 98.

On January 3, 2023, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(6).[70] In the Motion to Withdraw, Finney's Rule 61 counsel represented that, after undertaking a thorough analysis of the Defendant's claims, counsel had determined that the claims were so lacking in merit that counsel could not ethically advocate any of them.[71] Counsel further represented that, following a thorough review of the record, counsel was not aware of any other substantial claim for relief available to Finney.[72] Finney's Rule 61 counsel represented to the Court that there were no potential meritorious grounds on which to base a Rule 61 motion and therefore sought to withdraw as counsel.[73]

On January 12, 2023, the Court filed an amended scheduling order allowing Finney to file a response to Rule 61 counsel's Motion to Withdraw by no later than February 13, 2023, if he desired to do so.[74] Through various motions and correspondence filed in February and March of 2023, Finney requested an extension

---

[70] D.I. 96-97.  Superior Court Criminal Rule 61(e)(6) provides as follows:  If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw.  The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

[71] D.I. 100. Defendant's Rule 61 counsel's Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw.

[72] *Id.*

[73] *Id.*

[74] *See* D.I. 103.

to respond to counsel's Motion to Withdraw.[75]  On April 3, 2023, the Court extended the deadline for Finney to respond to August 3, 2023.[76]  Finney filed his response to Rule 61 counsel's Motion to Withdraw on June 26, 2023.[77]

On July 5, 2023, Finney submitted a Motion to Compel Discovery from Rule 61 counsel and the State of Delaware (the "Motion for Discovery").[78]  Finney filed another letter on July 7, 2023,[79] and a motion for an evidentiary hearing on his Rule 61 counsel's Motion to Withdraw.[80]  On July 25, 2023, Finney filed another motion for an evidentiary hearing on his Rule 61 motion.[81]

On October 30, 2023, the Court denied the Motion for Discovery.[82]  On that same day, Finney filed another response to the Motion to Withdraw by way of a letter which purports to raise additional claims of ineffective assistance of counsel and attached more than one hundred pages of annotated docket entries, letters and transcripts.[83]  On November 27, 2023, the Court filed a supplemental briefing

---

[75] D.I. 104-108.
[76] D.I. 109-110. On April 25, 2023 and June 8, 2023, Finney filed two additional letters, detailing concerns about his Rule 61 counsel and discovery that he allegedly had not been provided. D.I. 111, 113.
[77] D.I. 114.
[78] D.I. 115.
[79] D.I. 116.
[80] D.I. 117.
[81] D.I. 118.
[82] D.I. 119.
[83] D.I. 120.

schedule requesting that Defendant's trial counsel and the State respond to the allegations of ineffective assistance of counsel.[84]

Once again, on January 4 and 30, 2024, Finney filed additional motions to amend his Rule 61 motion.[85] Trial counsel filed a response to Finney's Rule 61 motion on August 30, 2024.[86] The State responded to Defendant's postconviction relief motions on October 25, 2024.[87] Defendant filed his reply on January 30, 2025.[88] Thereafter, Finney filed a Motion to be Exonerated on April 3, 2025.[89] In addition to the request to be exonerated, Finney responded further to Rule 61 counsel's Motion to Withdraw and trial counsel's affidavit.[90]

## APPLICABLE LAW FOR POSTCONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Rule 61 governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[91] That is, it is a means by which the court may correct

---

[84] D.I. 122. The Supplemental Briefing Schedule was further amended on June 20, 2024. D.I. 126.
[85] D.I. 123-124.
[86] D.I. 127.
[87] D.I. 131.
[88] D.I. 133.
[89] D.I. 134.
[90] *Id.*
[91] Super. Ct. Crim. R. 61(a)(1).

12

Constitutional infirmities in a conviction or sentence.[92] "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[93]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to the Rule 61 Motion.[94] Rule 61(i) establishes four procedural bars to postconviction relief.[95] Rule 61(i)(1) requires that a motion for postconviction relief must be filed within one year of a final judgement or conviction.[96] Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[97] Pursuant to Rule 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[98] However, ineffective assistance of counsel claims cannot be raised at any

---

[92] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[93] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[94] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[95] Super. Ct. Crim. R. 61(i)(1)-(4).
[96] Super. Ct. Crim. R. 61(i)(1).
[97] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "plead with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).
[98] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

earlier stage in the proceedings and are properly presented in a motion for postconviction relief.[99] The aforementioned procedural bars to relief do not apply to a claim that the court lacked jurisdiction.[100]

This is Defendant's first motion for postconviction relief and it was timely filed within one year of when his conviction became final.[101] Rule 61(i)(2) does not apply here because this is Defendant's first postconviction relief motion.[102] And, with one exception, Finney's claims involve allegations of ineffective assistance of counsel, which could not have been previously raised and are not subject to default because they cannot be asserted in proceedings leading to judgment of conviction nor raised on direct appeal.[103]

**Ineffective Assistance of Counsel Claims under *Strickland***

In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard set forth in *Strickland v. Washington.*[104] This test requires the defendant to show: (a) counsel's deficient

---

[99] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Ct. 2016).
[100] Super. Ct. Crim. R. 61(i)(5).
[101] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (if the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).
[102] *See* Super. Ct. Crim. R. 61(i)(2).
[103] *State v. Jackson*, 2023 WL 4104290, at *4 (Del. Super. Ct. 2023)
[104] *Strickland v. Washington,* 466 U.S. 668 (1984).

performance, *i.e.*, that his attorney's performance "fell below an objective standard of reasonableness,"[105] and (b) prejudice.

The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent.[106] Judicial scrutiny under the first prong is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[107] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.[108]

Under the second prong, in order to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[109] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[110] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the

---

[105] *Id.* at 688.
[106] *Id.* at 687-88, 694.
[107] *Id.* at 689.
[108] *Id.* at 690.
[109] *Id.* at 694.
[110] *Id.* at 693.

errors.[111] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[112]

The burden of proving ineffective assistance of counsel is on the defendant.[113] Mere allegations of ineffectiveness or conclusory statements will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[114] The court must be persuaded that the alleged errors were so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.[115] The test is not whether the defendant can demonstrate that the error had some "conceivable effect" on the outcome but rather whether the error undermined the reliability of the result of the proceeding.[116]

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[117] Moreover, there is a strong presumption that

---

[111] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-96 (1984).

[112] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686). Because the showing of prejudice is so central to any claim of ineffective assistance of counsel, the *Strickland* Court made clear that "[i]f it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland,* 466 U.S. at 697.

[113] *Oliver v. State,* 2001 WL 1751246 (Del. 2001).

[114] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[115] *State v. Gonzalez,* 2019 WL 1762976, *1 (Del. 2019).

[116] *Id.*

[117] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. 2008).

defense counsel's conduct constituted sound trial strategy.[118] While counsel has a duty to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . .a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."[119]

### FINNEY'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Finney raised a number of claims in his *pro se* motion for postconviction relief, which he initially filed on March 6, 2020,[120] and then amended on September 16, 2020[121] (the "First Amended Motion"). In his First Amended Motion, Finney asserts the following six ineffective assistance of counsel claims:

**Claim 1: Counsel Was Ineffective for Failing to Request an Instruction Regarding a Lesser Included Offense.** In his first claim, Finney alleges that his trial counsel was ineffective for failing to request an instruction on the elements of Unlawful Sexual Contact in the First Degree as a lesser included offense of First Degree Rape.[122]

**Claim 2: Counsel Was Ineffective for Failing to Request a Bill of Particulars.** In his second claim, Finney argues that trial counsel was ineffective for failing to

---

[118] *Strickland,* 466 U.S. at 689 (1984).
[119] *Id.* at 691.
[120] D.I. 75.
[121] D.I. 80.
[122] *Id.*

file a motion for a Bill of Particulars, which was necessary to allow him to differentiate between the various charges and properly defend against them.[123] Finney further argues that the failure to have a Bill of Particulars undermined the reliability of the verdict.[124]

**Claim 3: Counsel Was Ineffective for Failing to Object to Leading Questions.** In his third claim of ineffective assistance of counsel, Finney states the following: "During [trial,] as the transcripts support[,] the State clearly leads witnesses to testify by asking and then answering her questions. When defendant repeatedly asked counsel to object, counsel replied that he would do so during 'closing arguments.'"[125]

**Claim 4: Counsel Was Ineffective for Failing to Object to Testimony Regarding Prior Bad Acts.** Finney asserts that his trial counsel was ineffective for failing to object to testimony regarding a domestic incident between the Defendant and his wife, which Finney claims "prejudice[d] the defendant['s] character."[126]

**Claim 5: Counsel Was Ineffective for Failing to Investigate Facts.** Finney contends that trial counsel was ineffective for failing to investigate the dates when he was living at the two properties where the criminal activity allegedly occurred.[127]

---

[123] *Id.*
[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] *Id.*

**Claim 6: Counsel Was Ineffective for Failing to Challenge the Indictment.**

Finney asserts that "[t]rial [c]ounsel failed to challenge [the] indictment. It is unclear from the charges as indicted whether the State was referencing separate incidents. Because the defendant had two different victims."[128]

On January 30, 2024, Finney further supplemented his First Amended Motion by alleging four additional claims for ineffective assistance of counsel and one claim of prosecutorial misconduct (the "Second Amended Motion, and together with the First Amended Motion, the "Amended Motion").[129] These claims can be fairly summarized as follows:

**Claim 7: Counsel Was Ineffective for Failing to Challenge the Affidavit of Probable Cause.** Finney claims that his affidavit of probable cause was defective and/or inappropriately altered because it presented differing dates and information throughout and there were irregularities in the signatures and seals, which trial counsel should have challenged.[130]

**Claim 8: Counsel Was Ineffective for Failing to Challenge Inconsistencies in the Victims' Statements.** Finney argues that trial counsel failed to effectively cross

---

[128] *Id.*

[129] D.I. 124.

[130] *Id. See also* D.I. 85. Final Case Review Transcript, dated May 6, 2019, at 10-12.

19

examine the victims by not pointing out the inconsistencies between the statements they made to investigators and those they made at trial.[131]

**Claim 9: Counsel Was Ineffective for Failing to Share Discovery Materials.**

Finney alleges that trial counsel failed to provide him with his discovery before trial which prevented him from assisting in his defense.[132]  In particular, Finney alleges ZG made multiple statements before trial which he did not receive until after trial.[133]

**Claim 10: Counsel Was Ineffective for Failing to Challenge the Court's Verdict.**

Finney asserts that both his trial and appellate counsel were ineffective because they failed to challenge the court's verdict, which Finney claims went against the weight of the evidence presented at trial.[134]  According to Finney, he was erroneously convicted of Continuous Sexual Abuse of a Child "even though the witness testified to only one incident."[135]

**Claim 11: The State Knowingly Used False Testimony.** Finney contends that "[t]he state knowingly used false testimony. During trial the state's witnesses made statements that differed from their previous statements that went unchecked or questioned by the state."[136]

---

[131] D.I. 124.
[132] *Id.*
[133] *Id.*
[134] D.I. 124.
[135] *Id.*
[136] *Id.*

## DEFENDANT'S POSTCONVICTION CLAIMS ARE WITHOUT MERIT

For the reasons discussed below, each of Defendant's claims are without merit.

**Claim 1: Counsel Was Ineffective for Failing to Request an Instruction Regarding a Lesser Included Offense.**

In his Amended Motion, Finney claims that trial counsel was ineffective for failing to request that the trier of fact be instructed on the elements of Unlawful Sexual Contact in the First Degree[137] as a lesser-included offense of Rape in the First Degree.[138] This claim is without merit.

As the Delaware Supreme Court explained in *Allison v. State*,[139] "[i]n order to be entitled to an instruction of a lesser-included offense, a defendant must demonstrate the existence of 'some evidence that would allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge.'"[140] In *Allison*, the defendant claimed that his trial counsel was ineffective for failing to request a jury instruction on the elements of second degree robbery as a lesser-

---

[137] 11 *Del. C.* §769 sets forth the elements of Unlawful Sexual Contact in the First Degree and provides, in pertinent part, as follows: (a) A person is guilty of unlawful sexual contact in the first degree when: . . . (3) The person intentionally has sexual contact with another person who is less than 13 years of age or causes the victim to have sexual contact with the person or a third person.

[138] 11 *Del. C.* §773 sets forth the elements of Rape in the First Degree and provides, in pertinent part, as follows: (a) A person is guilty of rape in the first degree when the person intentionally engages in sexual intercourse with another person and any of the following circumstances exist: . . . (5) The victim has not yet reached that victim's twelfth birthday, and the defendant has reached that defendant's eighteenth birthday. 11 *Del. C.* §761(h)(2), in turn, defines "sexual intercourse" to include, *inter alia*, any act of cunnilingus or fellatio regardless of whether penetration occurs.

[139] *Allison v. State*, 2010 WL 3733919 (Del. 2010).

[140] *Id.* at *1 (citing *Henry v. State*, 805 A.2d 860, 864 (Del. 2002)).

21

included offense of first degree robbery.[141]  However, Allison's defense at trial was that he was not present at the robbery.[142]  The Court found that an instruction on the lesser-included offense of second degree robbery would have been entirely inconsistent with his defense of not being present at the crime scene.[143]  As such, the Supreme Court found no basis for the defendant's claim that counsel was ineffective for not requesting such an instruction.[144]

In the case at hand, Finney's defense at trial included, among other things, that he took no overt actions to intentionally commit any of the sexual offenses against his granddaughters for which he was accused.  Rather, he argued that he was the victim of inappropriate advances made by the two minor children.  As in *Allison*, an instruction regarding the lesser-included offense of Unlawful Sexual Contact in the First Degree would have been entirely inconsistent with Finney's defense at trial as both Rape in the First Degree and Unlawful Sexual Contact in the First Degree require an intentional act.[145]

Moreover, no evidence was established at trial that would allow the trier of fact to rationally acquit the Defendant on the greater charge of Rape in the First Degree and convict on the lesser charge of Unlawful Sexual Contact in the First

---

[141] *Id.*
[142] *Id.*
[143] *Id.*
[144] *Id.*
[145] *Compare* 11 *Del. C.* § 769(a)(3) *with* 11 *Del. C.* § 773(a)(5).

Degree. The Defendant was only convicted of one charge of Rape in the First Degree, which was Count VIII of the indictment.[146] Count VIII alleged the following:

> MELVIN FINNEY, on or between the 25th day of March 2014, and the 24th day of March 2015, in the County of New Castle, State of Delaware, did intentionally have sexual contact with Z.G., a child who had not yet reached said victim's twelfth birthday and the defendant had reached the defendant's eighteenth birthday, to wit the defendant intentionally engaged in fellatio with the victim.[147]

At trial, ZG testified that she turned nine years old on March 24, 2014, and that she was nine or ten years old when Finney made her perform fellatio.[148] Fellatio is statutorily enumerated as an act of sexual intercourse and not sexual contact.[149] There was no evidence presented during trial that any other sexual conduct[150]

---

[146] *See* D.I. 70. Trial Transcript, dated May 15, 2019, at 93-94.

[147] D.I. 30. Rule 61 counsel notes that Count VIII does not properly enumerate the required elements of Rape in the First Degree as it appears to refer to "sexual contact" as opposed to "sexual intercourse." However, the charge goes on to make clear that the sexual contact Finney is accused of is the act of fellatio, which by statute is defined as sexual intercourse. Rule 61 counsel concludes that verbiage error is ultimately a distinction without a difference and caused no prejudice to the Defendant. The Court concurs.

[148] D.I. 71. Trial Transcript, dated May 14, 2019, at 40, 45-50.

[149] *See* 11 *Del. C.* § 761(h)(2).

[150] Sexual Contact is defined under 11 *Del. C.* § 761(g)(1) to mean any of the following touching, if the touching, under the circumstances as viewed by a reasonable person, is intended to be sexual in nature:

a. Any intentional touching by the defendant of the anus, breast, buttocks, or genitalia of another person.

b. Any intentional touching of another person with the defendant's anus, breast, buttocks, semen, or genitalia.

c. Intentionally causing or allowing another person to touch the defendant's anus, breast, buttocks, or genitalia.

23

occurred during that particular encounter between the Defendant and ZG that would support the finding of the lesser-included offense of Unlawful Sexual Contact in the First Degree.

In light of the foregoing, trial counsel could not be ineffective for failing to request an instruction regarding the lesser-included offense of Unlawful Sexual Contact in the First Degree.

**Claims 2 and 6: Counsel Was Ineffective for Failing to Challenge the Indictment and/or Request a Bill of Particulars.**

Claims 2 and 6 are allegations of ineffective assistance of counsel that question the specificity and clarity of the indictment and assert that counsel was ineffective for challenging it or otherwise failing to file a motion for a Bill of Particulars.[151]  For the reasons discussed below, these claims are without merit.

Superior Court Criminal Rule 7(c)(1) requires an indictment to set forth "a plain, concise and definite written statement of the essential facts constituting the offense charged."[152] The function of an indictment under Delaware law is "to put the

---

[151] Finney's argument regarding trial counsel's failure to challenge the indictment becomes somewhat more nuanced in his later filings.  Finney seems to take issue with the additional charges set forth in the reindictment, which he states were based on the victim interviews conducted at the Child Advocacy Center ("CAC") after his initial indictment on February 22, 2018.  D.I. 134 at 8.  According to Finney, ZG "changed her story" prompting the reindictment and the additional charges but asserts that the testimony was inconsistent and/or false and, as such, trial counsel should have challenged the reindictment on that basis.  *Id.* The Court will address Finney's arguments regarding the CAC interviews and such allegedly false testimony when discussing Claims 8 and 11.

[152] Super. Ct. Crim. R. 7(c)(1).

accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense."[153] It is a defendant's burden to move for a bill of particulars where the defendant is "uncertain of what specific conduct he [is] being prosecuted for" in an indictment. [154]

In *Luttrell v. State*, the Delaware Supreme Court was confronted with an appeal by a defendant who was convicted of multiple sex offenses whose motion for a bill of particulars was denied by the Superior Court.[155] The *Luttrell* defendant claimed "the indictment did not clearly delineate the acts for which he was being prosecuted or when they occurred, and therefore it did not allow him to adequately prepare a defense or protect him from double jeopardy."[156] The defendant asserted that "he was charged with multiple counts of the same general offense and the indictment did not contain sufficient facts to differentiate each count from others of the same type."[157] The Supreme Court held that the trial court erred in denying the motion for a bill of particulars, pointing out that "there is nothing in the indictment that allows anyone to distinguish the separate conduct that supposedly underlies each of the three counts."[158]

---

[153] *Luttrell v. State*, 97 A.3d 70, 76 (Del. 2014).
[154] *Id.*
[155] 97 A.3d 70, 71 (Del. 2014).
[156] *Id.*
[157] *Luttrell*, 97 A.3d at 73.
[158] *Id.*

The issues present in *Luttrell*, however, are not present here. In this case, the charges in the indictment and reindictment specifically outline what conduct was alleged to have occurred with respect to each victim within a particular time frame.[159] Trial counsel and Finney were provided with notice as to the precise allegations, as indicated by reference to each of the two victims in varying charges and precise descriptions of the sexual conduct alleged.[160] Further, this Court, sitting as the trier of fact, clearly understood what conduct was alleged in each count and gave due consideration to each charge before rendering a decision, as evidenced by Finney being acquitted of six offenses.[161] In view of the foregoing, there was no basis for trial counsel to challenge the reindictment since it clearly delineated the acts for which Finney was being prosecuted and when they occurred. The Court cannot see how Finney was prejudiced by counsel's failure to request a Bill of Particulars or otherwise challenge the indictments. As such, Claims 2 and 6 are without merit.

**Claim 7: Counsel Was Ineffective for Failing to Challenge the Affidavit of Probable Cause.**

Finney claims that trial counsel was ineffective for failing to challenge the affidavit of probable cause. Finney asserts that the detective that filed the warrant

---

[159] *See* D.I. 30.
[160] *Id.*
[161] D.I. 70. Trial Transcript, dated May 15, 2019, at 93-94.

in his case "blatantly altered" the paperwork,[162] and that the warrants differ in dates and times and lack signatures and seals.[163]

As a threshold matter, although Claim 7 is couched as a claim for ineffective assistance of counsel, the Court notes that Finney did not raise any claims regarding the validity of the search warrant or affidavit of probable cause on direct appeal. Based on the record in this case, any such claim on direct appeal was unlikely to be found to have merit as the Court squarely addressed Finney's claim regarding trial counsel's failure to challenge the affidavit of probable cause at Finney's final case review.[164] After raising his concerns regarding certain perceived irregularities surrounding the search warrant with the Court, the following exchange occurred:

> THE COURT: So, Mr. Finney, and you've presented this to Mr. Wilkinson, and the complaint is Mr. Wilkinson doesn't believe this is a basis to challenge the search warrant.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Okay. But this is what I will tell you: It's Mr. Wilkinson's decision as your trial counsel to decide whether or not there is a sufficient basis to challenge evidence, including whether or not the search warrant properly was executed. I think, if I can guess as to what he's telling you, that he's probably right in not pursuing a motion to suppress the evidence obtained through the warrant. What I am looking at I doubt would be a basis to

---

[162] D.I. 85. Final Case Review Transcript, dated May 6, 2019, at 10-12.

[163] D.I. 133 at 3. The Court notes that, as with Claims 2 and 9, Finney similarly asserts that the substance of the affidavits is based on false testimony because the victim's statements were inconsistent over time.

[164] D.I. 85. Final Case Review Transcript, dated May 6, 2019, at 10-12.

suppress the warrant. But in any event, it's Mr. Wilkinson's decision as counsel to pursue. Although I understand your frustration, I'm going to hand it back to you, Mr. Finney.

MR. WILKINSON: Yes, Your Honor. The State isn't presenting anything that was from the basis of that anyway, the search warrant.

THE COURT: Okay. So, even if Mr. Wilkinson, Mr. Finney, was to file a motion to suppress, none of the evidence the State intends to present was obtained through the warrant, so that motion essentially would be moot. There really wouldn't be much point of it. . . .[165]

In his affidavit, trial counsel reaffirmed that he had no basis for challenging the affidavit of probable cause.[166] Given that the State did not present any evidence at trial obtained through the warrant, Finney cannot demonstrate prejudice as a result of trial counsel's failure to challenge the warrant, rendering Claim 7 meritless under *Strickland*.

**Claim 3, 4, and 8: Counsel was Ineffective for Failing to Object to Leading Questions, to Object to Testimony Regarding Prior Bad Acts, and to Challenge Inconsistencies in Victims' statements.**

Claims 3, 4, and 8 set forth allegations of ineffective assistance of counsel regarding trial counsel's decision not to object to, or challenge certain testimony. These claims are also without merit.

---

[165] *Id.* at 11-12.
[166] D.I. 127.

In Claim 3, Finney asserts that his trial counsel was deficient for failing to object to leading questions posed by the State. However, the record demonstrates that trial counsel did object to leading questions posed by the State on multiple occasions.[167] Those objections were sustained and the State rephrased the question.[168] It is within trial counsel's strategic purview to determine when an objection is appropriate. Finney has not established how trial counsel's failure to object to every leading question resulted in any prejudice toward Finney or that there is a reasonable probability that the outcome of the trial would have been different had trial counsel objected more.[169] Moreover, any alleged prejudice to Finney due to leading questions by the State was ameliorated by the nature of his bench trial, where the dangers posed by leading questions are considerably diminished.[170]

In Claim 4, Finney alleges that trial counsel's failure to object when the State presented testimony of a domestic incident between the Defendant and his wife prejudiced his character. While there was testimony of this nature, it was not offered as character evidence.[171] Janai Clark, AG's mother, discussed the incident only for purposes of explaining how unusual it was for her daughter to call her early in the

---

[167] *See* D.I. 71. Trial Transcript, dated May 14, 2019, at 36, 55, 151, 153, 155.
[168] *Id.*
[169] *See Strickland v. Washington,* 466 U.S. 668 (1984).
[170] *McMullen v. State*, 253 A.3d 107, 117 n.41 (Del. 2021) ("A court hearing a bench trial may relax the rules of evidence to err on the side of admissibility, as jury confusion in that context is not a concern.") (quoting *City of Wilmington v. Flamer*, 2013 WL 4829585, 6 (Del. Super. Ct. 2013).
[171] *See* D.I. 71. Trial Transcript, dated May 14, 2019, at 105-106.

morning and tell her that she needed to be picked up.[172] A second instance where AG had called her mother early in the morning to be picked up from her grandparent's house was related to one of AG's allegations of sexual assault by Finney.[173] These were the only two instances in which Clark received a phone call of this kind from AG, and both were relevant to demonstrate the significance of those phone calls.

Moreover, Clark's testimony made clear that Finney was the victim of the domestic incident, and no argument was put forth that because Finney was involved in such a dispute, he had the propensity to engage in sexual misconduct against his grandchildren. Thus, trial counsel had no basis to object under D.R.E. 404. Again, Finney has failed to demonstrate how counsel's representation fell below an objective standard of reasonableness or caused him any prejudice by failing to object to the testimony regarding the domestic incident involving his wife.[174]

With respect to Claim 8, Finney alleges that trial counsel was ineffective because he failed to challenge inconsistencies between the victims' trial statements and statements made during their CAC interviews. This claim appears to be the crux of Finney's claims of ineffective assistance of counsel as he devotes hundreds of pages of his *pro se* responses and briefing to the issue by attempting to point out

---

[172] *Id.*
[173] *Id.* at 107-109.
[174] *See Strickland v. Washington,* 466 U.S. 668 (1984).

what he perceives as material inconsistencies in their statements.[175] Finney painstakingly reviews and annotates a multitude of pages of trial transcript and CAC interview statements in an attempt to prove to the Court that the victims lied and he should be exonerated.[176] In so doing, Finney seems to ignore the fact that "it is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[177] Finney opted for a bench trial so determinations regarding the credibility of the victims' testimony were made by the trial judge. The Amended Motion is not an opportunity for Finney to relitigate his case or attempt to overturn such findings of fact.

With respect to Finney's claim of ineffective assistance of counsel, in response to Claim 8, trial counsel explained that when conducting a cross examination of a witness he does not address "each and every inconsistency in a witness' statement if the statement is a distinction without a difference[, yet] does bring out any inconsistency that furthers the defense of the client."[178] Under *Strickland*, there is a strong presumption that trial counsel's conduct was reasonable and constituted sound trial strategy.[179] Many of the inconsistences that Finney points

---

[175] *See* D.I. 120, 133, 134.
[176] *Id.*
[177] *McCoy v. State*, 112 A.3d 239, 267 (Del. 2015) (quoting *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).
[178] D.I. 127.
[179] *Strickland,* 466 U.S. at 689 (1984).

out are not true inconsistencies that go to the core of the alleged charges.[180] For example, when comparing ZG's CAC interview with her trial testimony, Finney notes that at trial ZG stated that Finney put her breast in his mouth but in the CAC interview she fails to mention that fact and only states that he touched her breasts.[181]

While the Court acknowledges there may be discrepancies between the victims' trial testimony and their CAC interview statements, it does not appear to the Court that any of these discrepancies rise to the level that would require or compel any reasonable trial counsel to bring them up on cross examination. Put differently, Finney has not demonstrated how trial counsel's failure to cross examine the victims' regarding these discrepancies was objectively unreasonable or would otherwise have made a difference in the outcome of his bench trial as contemplated under *Strickland*.

Indeed, in *Green v. State*, the Delaware Supreme Court previously found a similar decision by trial counsel not to cross examine a child witness about an inconsistency between her trial testimony and CAC interview failed to satisfy either prong of *Strickland*, finding said decision to be objectively reasonable and consistent

---

[180] Some of the "inconsistencies" Finney alleges are not inconsistencies at all. Delaware courts have recognized that child victims of sexual abuse often exhibit gradual and conflicting disclosures over time. *See Condon v. State*, 597 A.2d 7 (Del. 1991)(finding that experts in psychological dynamics may testify about general tendencies toward gradual and conflicting disclosures by victims of child sexual abuse but such testimony is limited to explaining general behavioral patterns and cannot quantify the truthfulness of a specific complainant).

[181] D.I. 120. *See* annotated CAC Interview of ZG at 10-14.

with the defense strategy.[182]  Here, trial counsel determined that cross examining the victims regarding the discrepancies between their trial testimony and CAC statements did not further Finney's defense strategy—that the incidents did not occur and could not have occurred given the lack of privacy in the house and fact that the victims continued to willingly visit their grandparents' house over the four or five years when the incidents purportedly took place.[183]  Given that strategy, it was objectively reasonable for trial counsel not to challenge minor inconsistencies in the victims' testimony.

**Claim 5: Counsel was Ineffective for Failing to Investigate Facts.**

In Claim 5, Finney asserts that trial counsel was ineffective for failing to investigate the specific dates when Defendant was living at the two residences where the alleged crimes took place—the East Side residence and the New Castle residence.[184] Finney seems to be of the view that if he could have established the exact dates that he resided in each residence at trial and was able to demonstrate that he did not reside at a given residence during the year when the victims alleged

---

[182] *Green v. State*, 238 A.3d 160 (Del. 2020).  The defense strategy in *Green* was that the victim and her sister did not like the defendant and would lie to hurt him, a strategy that appeared to work given that Green was acquitted of all counts except those supported by physical evidence.  *Id.* at 179.

[183] D.I. 70.  Trial Transcript, dated May 15, 2019, at 81-88.  As previously noted, the defense also argued that Finney was the victim of inappropriate sexual behavior by his minor granddaughters.

[184] D.I. 80.

specific abuse occurred, such evidence would have undermined the credibility of the victims' testimony. For the reason discussed herein, this claim also lacks merit.

While counsel has a duty to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . .a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments."[185] Finney's wife testified that she lived with her husband at the New Castle home, located at 504 West Avenue, since approximately July of 2012 but wasn't sure of the exact date.[186] Aside from the minor victims, other individuals similarly testified that Finney resided at both the East Side residence and the New Castle home.[187] Finney himself does not dispute that he lived at both houses.[188]

A further investigation by trial counsel into the exact dates that Finney moved in and out of each residence is unlikely to have materially benefited his defense. In addition to the elements of the alleged crimes, the State need only prove that the conduct took place within the jurisdiction of this Court and not the exact date. Trial counsel's decision not to investigate exactly when Finney was living at the two residences was reasonable in light of the fact that the specific house where the

---

[185] *Strickland,* 466 U.S. at 691 (1984).
[186] D.I. 71. Trial Transcript, dated May 14, 2019, at 201.
[187] *Id.* at 23, 87-88, 100-103, 172, 176-177.
[188] D.I. 70. Trial Transcript, dated May 15, 2019, at 48-49. Finney believes that he and his wife moved to the New Castle residence in 2013 as opposed to 2012. *Id.*

instances of sexual abuse occurred are immaterial for purposes of satisfying the required elements of the crimes charged. Therefore, trial counsel's decision not to further investigate when exactly the Defendant resided at each property was objectively reasonable under the circumstances.

**Claim 9: Counsel was Ineffective for Failing to Share Discovery Materials.**

Finney argues that trial counsel failed to give him discovery before trial so he was unable to assist in his defense.[189] In particular, he takes issue with the fact that he did not receive copies of the CAC interviews of the victims, which as previously discussed, he sees as inconsistent with their trial testimony and should have been utilized to undermine the victims' credibility.[190]

There is no obligation of counsel to provide material given in discovery to the defendant. While it is good practice, there is no constitutional requirement to do so.[191] However, in this case, trial counsel affirms that he met with Finney over ten times in person, as well as by telephone and video calls.[192] Trial counsel also maintains that he went over the discovery in detail with Finney, including reading the discovery verbatim to him.[193] Based on the foregoing, the Court cannot conclude

---

[189] D.I. 124.
[190] D.I. 134.
[191] *State v. Winn,* 2004 WL 3030023, *2 (Del. Super. Ct. 2004), *affirmed,* 2005 WL 3357513 (Del. 2005); *State v. Robinson,* 2012 WL 1415645, *3 (Del. Super. Ct. 2012), *affirmed,* 2012 WL 4162948 (Del. 2012).
[192] D.I. 127.
[193] *Id.*

that trial counsel's representation fell below an objective standard of reasonableness.[194]

**Claim 10: Counsel was Ineffective for Failing to Challenge the Court's Verdict.**

Finney contends that trial counsel failed to challenge the court's verdict because "[he] was convicted of continuous sexual abuse even though the witness testified to only one incident."[195] This claim also lacks merit.

First, the victims both testified to more than one incident of sexual abuse by Finney.[196] Second, trial counsel indicated that he "argued for Finney's innocence[, and] does not understand what exactly [he] is challenging."[197] Finney has not specifically articulated what trial counsel failed to challenge about the court's verdict. As the finder of fact, Judge LeGrow applied the facts of the case to the law and found there was sufficient evidence to convict Finney on numerous counts.[198] She also acquitted him of several counts for which she did not find sufficient evidence.[199] Trial counsel could not be ineffective for failing to challenge the court's verdict when there was no legal basis to do so.

---

[194] Assuming arguendo that Finney did not get to review certain pieces of discovery, he has not identified how such information, had he known about it prior to trial, would have furthered his defense for the reasons previously discussed with respect to Claim 8.

[195] D.I. 124.

[196] *See* D.I. 71. Trial Transcript, dated May 14, 2019, at 47-48, 53-55, 56-58, 67-70, 71-72, 130-132, 138-140, 143-146, 153-154, 155.

[197] D.I. 127.

[198] D.I. 70. Trial Transcript, dated May 15, 2019, at 92-94.

[199] *Id.*

**Claim 11: The State Knowingly Used False Testimony.**

Similar to Claim 8, Finney asserts that the State's witnesses made statements during their testimony "that differed from their previous statements that went unchecked or questioned by the State."[200] For its part, the State argued in its response that trial counsel had an opportunity to and did cross-examine their witnesses.[201] Further, the State emphasized that Finney failed to substantiate testimony that was false and produce any evidence to support this claim.[202]

Notwithstanding the foregoing, Claim 11 is procedurally barred as Finney was required to raise any such claims relating to prosecutorial misconduct and perjury on direct appeal.[203] Rule 61(i)(3) prohibits consideration of "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction" unless the defendant can demonstrate "[c]ause for relief from the procedural default" and "[p]rejudice from violation of the movant's rights."[204] Rule 61(i)(5) provides relief from a procedural default for claims (i) that the Court lacked jurisdiction or (ii) in which the defendant pleads with particularity that either new evidence exists

---

[200] D.I. 124.
[201] D.I. 131. Trial counsel did not respond to this claim, as it "[was] not directed at [c]ounsel." D.I. 127.
[202] D.I. 131.
[203] *See Ruffin v. State*, 2019 WL 719038 (Del. 2019) (holding that claims of prosecutorial misconduct not raised on direct appeal are procedurally barred under Rule 61(i)(3)); *see also Reeder v. State*, 2006 WL 1210986 (Del. 2006) (holding that perjury claims raised for the first time on a motion for postconviction relief are procedurally barred under Rule 61(i)(3)).
[204] *Id.*

that creates a strong inference of actual innocence, or a new rule of constitutional law, retroactively applied to the movant's case, renders the conviction invalid.[205]

Finney makes no challenge based on jurisdiction, offers no new evidence of his actual innocence or a new rule of constitutional law that would overcome this procedural default.[206] Nor can he demonstrate cause for relief or prejudice because the ineffective assistance of counsel claims relating to the purported perjury and prosecutorial misconduct fail on the merits.

---

[205] Super. Ct. Crim. R. 61(i)(5) and 61(d)(2)(i)-(2)(ii).
[206] Super Ct. Crim R. 61(d)(2)(i) and (ii).

# CONCLUSION

Finney has failed to establish that his trial counsel was deficient in any regard or that he suffered actual prejudice as a result thereof. The Court has reviewed the record carefully and has concluded that Finney's Amended Motion is without merit and devoid of any other substantial claims for relief. The Court is also satisfied that Defendant's assigned Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Defendant does not have a meritorious claim to be raised in his postconviction motion.

For all of the foregoing reasons, Finney's Amended Motion for Postconviction Relief should be **DENIED** and Rule 61 counsel's motion to withdraw should be **GRANTED**. Finney's Motion to be Exonerated and any other pending motions not previously addressed by the Court should be **DENIED**.

**IT IS SO RECOMMENDED.**

*/s/ Janine M. Salomone*
The Honorable Janine M. Salomone

oc: Prothonotary
cc: Dianna A. Dunn, Esquire, Deputy Attorney General
Benjamin S. Gifford, IV, Esquire (Postconviction counsel)
Ralph D. Wilkinson, Esquire, Office of Defense Services

Melvin W. Finney, James T. Vaughn Correctional Center